IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEANNETTE P. TAMAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 3151 |
| | ) | |
| BRIAN HAMER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Governor Rod R. Blagojevich's ("Governor"), Defendant Alonzo Monk's ("Monk"), and Defendant Brian Hamer's ("Hamer") motion to dismiss Counts V and VI of the second amended complaint. This matter is also before the court on Defendant Illinois Department of Revenue's ("IDOR") motion to dismiss all claims brought against the IDOR. For the reasons stated below, we grant both motions to dismiss.

**BACKGROUND**

Plaintiff Jeannette P. Tamayo ("Tamayo") alleges that in October 1999 she began working for the Illinois Gaming Board ("IGB") as its Deputy Chief Counsel.

1

Tamayo claims that her job entailed representing the IGB in licensing investigations and enforcement matters, and preparing rules for the IGB. An Administrator was allegedly responsible for overseeing the day-to-day operations of the IGB and for maintaining the IGB records. According to Tamayo, in June 2003, the IGB Administrator resigned and Tamayo was appointed as the Interim Administrator. In January 2003, the Governor was sworn in. Tamayo contends that between January 2003 and May 22, 2006, the Governor utilized Monk, his Chief of Staff, and Hamer, the IDOR Director, to take control of the "operational, budgetary, and personnel decisions of the IGB." (SA Compl. Par. 23). According to Tamayo, while she served as the Interim Administrator, there was an ongoing feud between Tamayo on one side and the Governor, Hamer and Monk on the other side. Tamayo alleges that the feud involved a power struggle over the operational and personnel decisions of the IGB. Tamayo also contends she was entitled to receive a pay increase as the Interim Administrator, but due to her disagreements with Defendants, she did not receive her pay increase. On April 6, 2004, Tamayo allegedly filed a discrimination charge with the Equal Employment Opportunity Commission complaining about the lack of her salary increase and alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).

Tamayo further alleges that in March 2005, the Governor appointed a new IGB Chairman and new members to the IGB Board. After the new appointments, Tamayo alleges that she was excluded from meetings and was denied access to information that she needed in order to perform her job as the Interim Administrator. On November 4, 2005, the IGB members appointed another person as the Administrator. Tamayo claims that when she returned to her Deputy Chief Counsel position, she was given routine work assignments and was ostracized at work. For example, she claims that she was banned from IGB meetings, prohibited from attending staff meetings, and prohibited from working on licensing matters. Tamayo states that on May 22, 2006, she resigned from her employment.

Tamayo subsequently brought the instant action in June 2006 and initially appeared before another judge. In December 2006, Tamayo was given leave to file a second amended complaint and on May 16, 2007 this case was reassigned to the undersigned judge. Tamayo includes in her second amended complaint EPA discrimination claims brought against the IDOR and the IGB (Count I), EPA retaliation claims brought against the IDOR and the IGB (Count II), Title VII gender discrimination claims brought against the IDOR and IGB (Count III), Title VII retaliation claims brought against the IDOR and IGB (Count IV), equal protection claims brought pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Governor,

Hamer, and Monk in their individual capacities (Count V), and Section 1983 first amendment retaliation claims brought against the Governor, Hamer, and Monk in their individual capacities (Count VI). The IDOR moves to dismiss all claims brought against the IDOR. Also, the Governor, Hamer, and Monk (collectively referred to as "Individual Defendants") move to dismiss Counts V and VI.

## LEGAL STANDARD

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of

their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that a "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

I. Claims Brought Against the IDOR

The IDOR argues that Tamayo is precluded from bringing an EPA claim or a Title VII claim against the IDOR since the IDOR was not the employer of Tamayo and Tamayo's own allegations in her second amended complaint reflect that fact. In general, an employee can only bring a Title VII claim or an EPA claim against the employee's employer. *See* 29 U.S.C. § 206(d)(1)(providing that "[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex"); 29 U.S.C. § 203(d)(defining term "Employer"); *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999)(stating that "[s]ince [the plaintiff] was not an employee . . . her Title VII . . . claim[] must fail"); *Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001)(stating that the Seventh Circuit "no longer applies the 'integrated enterprise' test to Title VII claims"); *E.E.O.C. v. State of Ill.*, 69 F.3d 167, 169 (7th Cir. 1995)(noting the possibility that a party could properly be named as a defendant in a Title VII case where "the defendant so far controlled the plaintiff's employment relationship that it was appropriate to regard

the defendant as the de facto or indirect employer of the plaintiff, as where a hospital prevents a nurse from being employed by a hospitalized patient"); *Hernandez v. Valet Parking Service, Inc.,* 2005 WL 2861054, at *5 (N.D. Ill. 2005)(stating that "Title VII specifically provide[s] for liability of an employer and make no provisos for other entities that relate to a plaintiff in an indirect manner" and that "Title VII . . .[is] clear in the limitations of [its] scope").

In the instant action, Tamayo specifically alleges in her second amended complaint that she was employed by the IGB. (SA Compl. Par. 13). Tamayo does not allege that the IDOR employed her at any point during the alleged misconduct. Neither does Tamayo include any facts in her second amended complaint that would indicate that the IDOR had control over her employment. Tamayo merely indicates that the IDOR had certain responsibilities regarding the processing of her salary increase. Tamayo in fact alleges that it was the Governor's Office rather than the IDOR that was preventing her salary increase. Tamayo contends, for example, that the "Governor's Office would not agree to pay [Tamayo] the salary set by the IGB. . . ." (SA Compl. Par. 41). In addition, Tamayo makes it clear in the many allegations concerning her independent decisions that were contrary to the alleged orders from the IDOR that she was not under the control of the IDOR. Tamayo also states that she "told Hamer that the IGB was an independent agency under the law

and that she reported to the IGB and not Hamer, IDOR or the Governor's Office." (SA Compl. Par. 38). Tamayo further alleges that when she was finally removed from the Interim Administrator position, it was the IGB members that made the decision rather than any IDOR personnel. (SA Compl. Par. 64). Thus, the allegations clearly show that the IDOR was a separate entity from the IGB and that the IDOR could not be reasonably deemed to have control over Tamayo's employment or been her employer under Title VII or the EPA.

Tamayo argues that the IDOR improperly seeks to base its motion to dismiss on a defense. Tamayo argues that she is not required to plead the fact that the IDOR was her employer and thus, the IDOR's arguments are premature. While it may be true that a plaintiff need not anticipate all defenses in the complaint, it is also true that a "complaint can also allege too much" and "a plaintiff may unwittingly plead h[erself] out of court by alleging facts that preclude recovery." *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007). In the second amended complaint, Tamayo specifically states that the IGB was her employer. All of the facts included in the second amended complaint support the conclusion that the IGB was her sole employer. Tamayo also includes facts that show that the IDOR was a separate entity and could not control Tamayo in her role as the Interim Administrator for the IGB. Tamayo argues that she has alleged facts that show that the IDOR controlled her

employment. Tamayo points, for example, to her allegation that Hamer threatened Tamayo with "dire personal consequences" if she did not comply with his alleged demands, (Ans. 4), but such an allegation does not indicate that Hamer had any authority over Tamayo in the capacity of Tamayo's employer. Tamayo makes it abundantly clear in her second amended complaint that the IDOR could at most interfere with her pay raise. There is no indication that the IDOR had the authority to control her work duties, reduce her benefits, or terminate her employment. Thus, it is clear based upon Tamayo's own allegations, not the absence of allegations, that the IDOR was not her employer. Therefore, we grant the IDOR's motion to dismiss the Title VII claims and the EPA claims brought against the IDOR.

II. Section 1983 Claims (Counts V and VI)

The Individual Defendants argue they are protected from Section 1983 liability by the doctrine of qualified immunity. A public official is shielded from liability under the doctrine of qualified immunity unless the plaintiff can establish: "(1) the violation of a constitutional right that is (2) clearly established at the time of the alleged violation, so that a reasonable public official would have known that his or her conduct was unlawful." *Boyd v. Owen*, 481 F.3d 520, 523 (7th Cir. 2007). Tamayo argues that she was denied equal protection under the law because she was

treated less favorably than similarly-situated male employees in regards to the alleged denial of her pay increase. (SA Compl. Par. 96-98). She also contends that Defendants retaliated against her due to her complaints about her alleged constitutional deprivations. The Individual Defendants argue that Tamayo has "not assert[ed] a violation of any clearly established constitutional right." (ID Mot. 9).

### A. Denial of a Constitutional Right

The Seventh Circuit has stated that a court "cannot jump to" the second issue for qualified immunity "because the Supreme Court has made clear that [the court] must first consider whether there was a violation of a constitutional right before [the court] can consider whether that right was clearly established at the time of the violation." *Id.* Tamayo's second amended complaint makes it clear that the alleged refusal by Defendants to approve her salary increase was tied to the alleged ongoing feud with Tamayo and the power struggle over the IGB operations and personnel. Tamayo mentions in a conclusory fashion that her alleged mistreatment was possibly tied to the fact that she is a woman, but Tamayo fails to provide any facts that would indicate such a motive on the part of the Individual Defendants. To the contrary, Tamayo in detail alleges events that do not indicate any animus against her because of her gender. *Sanjuan*, 40 F.3d at 251 (explaining that "[o]ne pleads a 'claim for

10

relief' by briefly describing the events").

Tamayo specifies in her second amended complaint that her equal protection claim is tied to the alleged denial of her pay raise as the Interim Administrator. (SA Compl. Par. 98). However, Tamayo alleges that Hamer and Monk "continued to punish [Tamayo] for her alleged 'lack of cooperation' by blocking [her] salary increase." (SA Compl. Par. 39). Tamayo thus indicates that her salary dispute involved personal animosity between her and the Individual Defendants rather than animosity based upon her gender. Such personal animosity is not a basis for an equal protection claim and thus the alleged misconduct did not constitute unlawful discrimination or retaliation. The alleged struggle for control over the IGB operations and personnel does not implicate a violation of Tamayo's constitutional rights. The lack of allegations concerning animus based upon gender also indicate the lack of a culpable state of mind on the part of the Individual Defendants. If the Individual Defendants acted as Tamayo contends and the Individual Defendants believed that they were acting as part of the personal feud with Tamayo, then the mere fact that Tamayo was possibly treated less favorably than a male employee would not support a Section 1983 claim. *See Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003)(stating that "[i]t is generally only *deliberate* action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment")

(emphasis in original).

In regards to Tamayo's other allegations of mistreatment, Tamayo claims that she was retaliated against when she was not appointed as the permanent Administrator. However, Tamayo admits that she was removed from the Interim Administrator position by the IGB members rather than any of the Individual Defendants. Tamayo also claims that she was then "ostracized within the" IGB, (SA Compl. Par. 68), but there are no allegations that any of the Individual Defendants worked for the IGB. Tamayo contends that she was threatened with termination by the Individual Defendants and deprived of job duties, but she admits that such matters were controlled by the IGB rather than the Individual Defendants.

Also, Tamayo has not alleged facts that indicate that her First Amendment rights were violated. She merely contends that she made statements to the Individual Defendants about the authority of the IGB in her capacity as the Interim Administrator and that Defendants retaliated against her for her speech. *See Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007)(stating that certain case law has "made clear that public employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech"). Thus, Tamayo has failed to plead allegations that show the deprivation of a constitutional right or retaliation for

complaining about the denial of such a right.

Although the notice pleading standard articulated by the Seventh Circuit does not require an exhaustive list of facts relating to a claim, *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998), in the instant case Tamayo has alleged an exhaustive list of facts that contradict her conclusory statement relating to a claim of discrimination based upon her gender. We also note that the United States Supreme Court has recently addressed the notice pleading standard in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)(stating that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")(quoting *Papasan v. Allain,* 478 U.S. 265 (1986))(citing *Sanjuan,* 40 F.3d at 251).

Tamayo in a cursory fashion in her second amended complaint alleges that she was not being properly compensated in November 2003 and December 2003 and further alleges "that she believed it was because she was a woman and because she was 'not cooperating.'" (SA Compl. Par. 34). However, the remainder of Tamayo's complaint provides a detailed history of her confrontations with the Individual Defendants and their displeasure as to her job performance. Thus, Tamayo's

conclusory statement about her gender is not supported with sufficient facts. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999)(stating that "'[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)'")(quoting *Palda v. General Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir. 1995)). In addition, Tamayo has pled herself out of court with her voluminous and detailed recitation of her confrontations with the Individual Defendants and their displeasure of her job performance. *See Edwards*, 478 F.3d at 830 (stating that "a plaintiff may unwittingly plead h[erself] out of court by alleging facts that preclude recovery"). Therefore, we conclude that Tamayo has not alleged the deprivation of a constitutional right.

### B. Clearly Established Constitutional Right

In addition, even if Tamayo had alleged the deprivation of a constitutional right she has not shown that a reasonable official in the positions of the Individual Defendants would have understood that their alleged conduct was unlawful. Tamayo alleges that the denial of her pay raise was tied to an inter-agency power struggle and that the parties involved were acting based upon prior practices and customs and abstract notions such as the concept of the functions "historically performed by IGB personnel." (SA Compl. Par. 33). Thus, even if Tamayo could show that the

Individual Defendants violated her constitutional rights, there is no indication that there were clear cut statutory guidelines or rules that would have provided the Individual Defendants with definitive notice as to the allegedly unlawful nature of their conduct. As indicated above, there are not facts in the second amended complaint that would indicate that the Individual Defendants' alleged misconduct was related to the gender of Tamayo. The allegations presented by Tamayo include a lengthy series of confrontations with the Individual Defendants during which the common denominator was the Individual Defendants' alleged displeasure with the fact that Tamayo was not acquiescing to their demands. There is no indication in the second amended complaint that the alleged displeasure was in any way associated with Tamayo's gender. Therefore, based upon the above, we conclude that the Individual Defendants are shielded by qualified immunity and we grant the Individual Defendants' motion to dismiss Count V and VI.

## CONCLUSION

Based on the foregoing analysis, we grant the IDOR's motion to dismiss all claims brought against the IDOR and grant the Individual Defendants' motion to dismiss Counts V and VI.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 30, 2007